WESTINGHOUSE AIR–BRAKE CO. v. GREAT NORTHERN RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. June 24, 1898.)

No. 117.

1. FEDERAL COURTS—JURISDICTION IN PATENT CASES—WHERE SUITS MAY BE BROUGHT.

The provision in the judiciary act of 1887–88 that no civil suit, of which federal courts have jurisdiction concurrently with the courts of the several states, shall be brought against any person in any other district than that whereof he is an inhabitant, does not apply to patent suits, exclusive jurisdiction over which is conferred by Rev. St. § 629, cl. 9. And hence, prior to the act of March 3, 1897, defining the jurisdiction of the federal courts in patent suits, a suit for infringement by a citizen of a state of the Union could be brought in any district where valid service could be made upon the defendant.

**2. SAME—AMENDMENT AND REPEAL OF STATUTES.**

The act of March 3, 1897, defining the jurisdiction of the federal courts in patent suits, and authorizing the bringing of such suits in the district of which defendant is an inhabitant, or in which he "shall have committed the acts of infringement, and have a regular established place of business," did not repeal prior statutes, so as to oust the courts of jurisdiction in pending cases not falling within the jurisdictional limits prescribed in the new act.

**3. PATENTS—ANTICIPATION—"SUGGESTIONS" IN PRIOR PATENTS.**

Prophetical suggestions in a foreign patent of what can be done, when no one has ever tested, by actual and hard experience and under the stress of competition, the truth of the suggestions, or the practical difficulties in the way of their accomplishment, or even whether the suggestions are feasible, are not to be accepted as showing that a subsequent patent, which has already been sustained by the courts as a meritorious one, is without actual invention.

**4. SAME—AIR BRAKES.**

The Westinghouse patent, No. 376,837, for improvements in fluid pressure brake mechanism, *held* valid and infringed as to claims 1, 2, and 3.

**5. SAME—PRELIMINARY INJUNCTION.**

A railroad company continuing to use infringing air brakes on large numbers of its cars for 3½ years after notice of an adjudication by a circuit court of appeals sustaining the patent, and declaring infringement, cannot complain, on the ground of hardship, of a preliminary injunction, which provides for a gradual removal of the infringing brakes.

This appeal is by the Great Northern Railway Company from an order of the circuit court for the Southern district of New York, which granted a preliminary injunction against the infringement by that corporation of claims 1, 2, and 3 of letters patent No. 376,837, applied for October 1, 1887, and issued to George Westinghouse, Jr., on January 24, 1888, for improvements in fluid pressure brake mechanism.

The bill of complaint was filed October 8, 1896, and the defendant filed pleas to the jurisdiction, which were overruled December 27, 1897. The order for an injunction pendente lite was granted April 1, 1898. The questions of the validity of claims 1, 2, and 3 of this patent, and of their infringement by the quick action triple valve which is used by the defendant, were before this court, and were decided on October 15, 1894. Westinghouse Air-Brake Co. v. New York Air-Brake Co., 11 C. C. A. 528, 63 Fed. 962, and 26 U. S. App. 248.

Simon Sterne and Wm. H. Kenyon, for appellant.

Frederic H. Betts and George H. Christy (J. Snowden Bell, of counsel), for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The first question which arises upon this appeal is that of the jurisdiction of the circuit court for the Southern district of New York over the cause, so far forth as it relates to the appellant. The Great Northern Railway Company is a corporation organized under the laws of the state of Minnesota, and is a citizen of that state, and operates a line of railway from Duluth and St. Paul to the Pacific coast. It has an office in the city of New York, where its transfer books are kept and transfers of stock are made; and this part of its corporate business is attended to at said office by Edward T. Nichols, its secretary and assistant treasurer, who resides at Morristown, N. J. Service was made upon him in New York City, as secretary of the corporation. The complainant is a citizen of the state of Pennsylvania.

The appellant insists that, when the bill was filed, the only existing statute which prescribed and designated the proper district within which suits arising under the patent laws could be brought against a citizen of the United States was the first section of the act of March 3, 1887, as amended by the act of August 13, 1888 (25 Stat. 434), the last clause of which is as follows:

"And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suits shall be brought only in the district of the residence of either the plaintiff or the defendant."

The question whether the circuit courts of the United States could take jurisdiction without the consent of the defendant, of suits of which the federal courts have exclusive jurisdiction, in any other district than the one of which the defendant was an inhabitant when the suit was brought, has been much discussed since the date of the act of March 3, 1887, but, for the present, must be considered as substantially settled by the dicta contained in the opinions of the supreme court in Re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, decided December 18, 1893, and in Re Keasby & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, decided December 16, 1895.

If the clause of the section which has been quoted was an independent paragraph, and had no relation to the previous clauses of the same section, the contention of the appellant would have great force; but in the Hohorst Case it is regarded as so related to the preceding clauses that it must be considered as referring only to the jurisdiction of the circuit courts, which is concurrent with that of the several states. The earlier part of the section is as follows:

"The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states."

The bill in equity in this case does not aver the sum or value of the matter in dispute, and the jurisdiction of the circuit court depends entirely upon the subject-matter. In regard to causes of that class, the supreme court says in the Hohorst Case, which was a suit by a citizen of New York against an alien corporation, for the infringement of letters patent of the United States:

"By statute in force at the time of the passage of the acts of 1887 and 1888, the courts of the nation had original jurisdiction, 'exclusive of the courts of the several states,' 'of all cases arising under the patent right or copyright laws of the United States,' without regard to the amount or value in dispute. Rev. St. § 629, cl. 9; Id. § 711, cl. 5. The section now in question, at the outset, speaks only of so much of the civil jurisdiction of the circuit courts of the United States as is 'concurrent with the courts of the several states,' and as concerns cases in which the matter in dispute exceeds two thousand dollars in amount or value. The grant to the circuit courts of the United States, in this section, of jurisdiction over a class of cases described generally as 'arising under the constitution and laws of the United States,' does not affect

the jurisdiction granted by earlier statutes to any court of the United States over specified cases of that class. If the clause of the section defining the district in which suit shall be brought is applicable to patent cases, the clause limiting the jurisdiction to matters of a certain amount or value must be held to be equally applicable, with the result that no court of the country, national or state, would have jurisdiction of patent suits involving a less amount or value. It is impossible to adopt a construction which necessarily leads to such a result."

The Keasby & Mattison Case was a suit in equity between citizens of different states for the infringement of a trade-mark under the statute of March 3, 1881; and the bill alleged that the matter in dispute, exclusive of interest and costs, exceeded the sum or value of $2,000. The court hold that a suit for infringement of a trade-mark under the trade-mark act of 1881 was "one of which the courts of the United States have jurisdiction concurrently with the courts of the several states," and that it came within the provisions of section 1 of the act of August 13, 1888, and repeat the two grounds which governed the decision in the Hohorst Case, the second of which has been stated, and say emphatically that it is distinguishable from a trade-mark case in the essential particulars that "it was a suit for infringement of a patent right, exclusive jurisdiction of which had been granted to the circuit courts of the United States by clause 9 of section 629, and clause 5 of section 711, of the Revised Statutes, re-enacting earlier acts of congress, and was therefore not affected by general provisions regulating the jurisdiction of the courts of the United States, concurrent with that of the several states." This construction of the provisions of section 1 of the act of 1888 was very deliberately stated by the supreme court, had been apparently carefully considered, and, until it has been revised and altered by that court, is controlling upon us.

It follows that, inasmuch as jurisdiction of this class of cases does not depend upon inhabitancy, the defendant corporation "may be sued by a citizen of a state of the Union in any district in which valid service may be made upon the defendant." In re Hohorst, supra. Service was made upon the secretary of the company, who was in permanent charge of an office of the corporation in the city of New York, in which an important part of its corporate business was transacted; was made in accordance with section 432 of the New York Code of Civil Procedure (Tuchband v. Railroad Co., 115 N. Y. 437, 22 N. E. 360); and was a sufficient service upon the corporation (St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354; Société Foncière et Agricole des Etats Unis v. Milliken, 135 U. S. 304, 10 Sup. Ct. 823).

The appellants next assert that the act of March 3, 1897 (29 Stat. 695), devested the circuit court of any jurisdiction which it might have had when the suit was commenced. The statute is as follows:

"Chapter 395.

"An act defining the jurisdiction of the United States circuit courts in case brought for the infringement of letters patent.

"Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that in suits brought for the infringement of letters patent the circuit courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an

inhabitant, or in any district in which the defendant, whether a person, partnership or corporation, shall have committed acts of infringement and have a regular and established place of business. If such suit is brought in a district of which the defendant is not an inhabitant, but in which such defendant has a regular and established place of business, service of process, summons, or subpœna upon the defendant may be made by service upon the agent or agents engaged in conducting such business in the district in which suit is brought."

The act was passed about 15 months after the Keasby decision, and was obviously intended to add to the general statutes upon the subject of jurisdiction in patent cases a definition of the particular requisites for jurisdiction of such causes by the various circuit courts, and of the proper method of service of process upon a defendant in the district of which he was not an inhabitant. The object was to determine with precision the boundaries of jurisdiction, and to create a future method of service of process in patent causes against nonresident defendants, which had not theretofore been stated in a federal statute.

The appellant, however, says that the statute covered the subject of jurisdiction in patent cases, prescribed a new set of rules in regard thereto, and must be held to repeal former statutes. The circumstances of the cases and the statutes to which the appellant refers bear no similarity to those now in question. The statutes which, in the view of the supreme court, alone gave jurisdiction to circuit courts in patent cases, were very general. The new provisions were prospective, in accordance with the ordinary rule of construction when the language does not necessarily indicate that they are retroactive. Harvey v. Tyler, 2 Wall. 328. It is said, however, that the statute repealed former statutes, and that, therefore, the courts were ousted of jurisdiction in cases which were undetermined at the date of its approval, and in which the jurisdiction differed from the limits described in the new statute. Of course, it did not repeal the statute which gave the circuit courts exclusive jurisdiction of all cases arising under the patent laws. Bank v. Harrison, 8 Fed. 721. It did not repeal pre-existing remedies, and "is to be considered rather as a continuance and modification of old laws than as an abrogation of the old and the re-enactment of new ones." Treat v. Staples, 1 Holmes, 1, 5, Fed. Cas. No. 14,162; Wright v. Oakley, 5 Metc. (Mass.) 406.

The question of infringement depends upon the correctness of the construction which was given to the patent in the New York Air-Brake Case, supra. The former opinion of this court was based upon the position that the improvement shown in patent No. 376,837 was a marked and successful advance upon the invention described in No. 360,070, and that the later patent was entitled to a broad construction. The appellant introduces British letters patent to George Westinghouse, Jr., No. 4,676, applied for March 29, 1887, accepted April 29, 1887, which describes the invention of letters patent of the United States No. 360,070, and which says:

"It is obvious that it [the stem of the emergency valve] might be worked as described by a separate piston in a cylindrical cavity communicating on the one side of the piston with the auxiliary reservoir, and on the other side with the train pipe."

It is said that this describes the appellant's valve, shows that the change from 360,070 (which was applied for November 19, 1886) to 376,837 was an obvious one, and, therefore, that the former conception of the inventive character of the improvements must be modified. The successful character of the invention described in the later patent has been universally recognized in the litigations upon it, by the witnesses on both sides, including Mr. Massey, the inventor of the valve which is the subject of this suit, and by the courts in the Boyden Brake Cases, 66 Fed. 997, 25 U. S. App. 475, 17 C. C. A. 430, and 70 Fed. 816; and its importance at the date of the invention, in view of the practical failure of the brake mechanism of the previous patent, in the tests upon long freight trains, cannot be doubted. The prophetical suggestions in English patents of what can be done, when no one has ever tested by actual and hard experience and under the stress of competition the truth of these suggestions, or the practical difficulties in the way of their accomplishment, or even whether the suggestions are feasible, do not carry conviction of the truth of these frequent and vague statements. The nature and character of the invention of 376,837 were, in the record heretofore before this court, put to rigorous tests by examination and cross-examination in court; and the result which was then reached is not shaken by merely a single sentence in the English patent.

The defendant has about 16,000 cars in the equipment of its system of railway, which covers a very large extent of territory, of which number about 3,200 are equipped with the infringing valves. The order provided that these valves should be removed during successive periods of 60 and 30 days, occupying 9 months in all. In October, 1894, the attention of the defendant was called by a general circular to the decision of the circuit court of appeals; and in May, 1895, its attention was particularly called to the infringement by a written proposition from the complainant for a purchase of its valves, and an indemnity against claims for infringement. It has paid no attention to the subject for about $3\frac{1}{2}$ years, and it now thinks that it is a hardship to be prohibited from further infringement. The subject of the propriety generally of a preliminary injunction against the user of infringing mechanism has been fully considered by this court in Allington v. Booth, 24 C. C. A. 378, 78 Fed. 878; and the appellant discloses no peculiar equities which ought to induce a withholding of the injunction. It has been a deliberate user of a large number of valves, and has preferred to run the risk of an injunction than to displace its present equipment. The order of the circuit court is affirmed, with costs of this court.