## VAN PATTEN v. CHICAGO, M. & ST. P. R. CO.

(Circuit-Court, N. D. Iowa, W. D. June 10, 1896.)

1. **UNITED STATES COURTS—JURISDICTION—DISTRICTS.**
   Where exclusive jurisdiction is created and conferred upon the courts of the United States by special acts, passed prior to the enactment of the judiciary acts of March 3, 1887, and August 13, 1888, the jurisdiction so conferred is not affected by the provisions of those acts, limiting the place of bringing suit to the district whereof one of the parties is an inhabitant; such limitation being applicable only to cases whereof the state and federal courts have concurrent jurisdiction. In re Hohorst, 14 Sup. Ct. 221, 150 U. S. 653, followed.

2. **SAME—INTERSTATE COMMERCE ACT.**
   The federal courts have exclusive jurisdiction of suits brought under sections 8 and 9 of the interstate commerce act, to recover damage for overcharging.

3. **SAME.**
   The limitation as to the district within which suit can be brought in a United States circuit court, contained in the judiciary acts of 1887 and 1888, does not apply to suits brought under sections 8 and 9 of the interstate commerce act, to recover damages for overcharging, but such suits may be brought in any district in which the defendant can be found.

Action brought under provisions of the interstate commerce act, to recover damages for alleged overcharges. Submitted on question of jurisdiction.

Spencer Smith and Harl & McCabe, for plaintiff.

George R. Peck, H. H. Field, and Shull & Farnsworth, for defendant.

SHIRAS, District Judge. In this action the plaintiff seeks to recover damages against the defendant railway company, under the provisions of the interstate commerce act, for alleged overcharges; and the question now before the court is that of the jurisdiction of this court, the defendant company being a corporation created under the laws of the state of Wisconsin, but operating many miles of railway within the Northern district of the state of Iowa. On behalf of the defendant it is contended that the provisions of the act of congress of 1887, as amended by the act of 1888, control the question of the place of bringing suits based upon section 9 of the interstate commerce act, and therefore such actions must be brought in the district of which the defendant is an inhabitant, which in the case of corporations must be in the state wherein they are incorporated, and within the district in such state (in case there is more than one district therein) wherein the corporation has its principal or corporate office, as was held by the supreme court in Railway Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401. In considering the question thus presented, we must bear in mind that the matter of the jurisdiction of a federal court embraces two propositions: First. Is the controversy one of federal cognizance, by reason of the subject-matter or by reason of the diverse citizenship or alienage of the litigants? Second. If so, is the particular court whose jurisdiction is invoked competent to entertain the suit?

In determining the first question, it is clear that in the case now

before the court the answer to the query whether the subject-matter of controversy is within federal cognizance is to be sought, not in the provisions of the acts of 1887–1888, but in the provisions of the interstate commerce act. As already stated, this action is expressly based upon the provisions of the interstate commerce act, and the right of action created by sections 8 and 9 thereof would exist if the acts of 1887–1888 had never been adopted, and would continue to exist if those acts were to be now wholly repealed. That the subject-matter of the controversy, being a claim to recover damages for alleged violations of the interstate commerce act, the right to recover therefor being created by section 8 of that act, is one of federal cognizance, is not denied by the defendant; and the inquiry is therefore narrowed down to the second proposition, to wit, whether this court is competent to take jurisdiction over the defendant corporation, in the absence of consent upon its part to submit the controversy to the judgment of this court.

Counsel have discussed the question whether, under the provisions of the interstate commerce act, the jurisdiction over actions for damages based upon section 8 of the act is exclusive in the courts of the United States. Upon this proposition I concur in the view maintained by counsel for the plaintiff, that the jurisdiction is exclusive in the federal courts, in that section 9 of the act provides the remedy for the liability created by section 8, and that remedy consists in the right of invoking the aid of the commission, or of seeking damages in a district or circuit court of the United States of competent jurisdiction. If it had been the intent of congress that persons seeking relief against the violations of the act named in section 8 should have the right to sue for damages in state as well as federal courts, then the declaration in section 9 would have been that the action for damages might be brought in any court of competent jurisdiction; but, instead of so enacting, the act declares that the remedy shall consist of a right to appeal to the commission, or to sue for damages in any district or circuit court of the United States of competent jurisdiction. Thus, we reach the vital point in this inquiry, and that is, what is meant by a "circuit court of competent jurisdiction," as these words are used in section 9 of the interstate commerce act. The use of these words in the section would seem to indicate that, in the view of congress, there are courts of the United States competent to take jurisdiction over each cause of action as it arises under the provisions of the act, and courts not competent to entertain jurisdiction. It is clear that such difference, in the right to entertain jurisdiction in a given case, does not grow out of any difference between the several circuit courts with respect to their jurisdiction over the subject-matter of the controversy. In this particular no distinction or difference exists between the circuit courts in the several districts, and it is therefore clear beyond question that, in using the words "of competent jurisdiction" in the ninth section of the act, congress did not enact, assume, or imply that, as between the several circuit courts of the United States, there were

some competent to take jurisdiction under the provisions of the interstate commerce act, and some that were incompetent so to do. This being true, it follows that the words in question must have been used with reference to the place or district within which the court could obtain jurisdiction over the defendant; and the meaning of section 9, in this particular, is that any person claiming damages against a common carrier, under the provisions of section 8, may bring suit for such damages in any circuit court of the United States before which the defendant in the given case can be lawfully compelled to appear and defend against such claim for damages. The use of the words in question shows that it was the intent of congress to enact a limitation upon the matter of the place of bringing suit, and the extent of the limitation is the material question at issue. I do not find in the interstate commerce act, approved February 4, 1887, any specific provision upon the subject of the place or district within which suits for damages might be brought; and, in the absence of such provision in the act, it would seem to be the fair conclusion that congress intended to leave that matter to be settled by the general statutes regulating the place of bringing suits in the courts of the United States. When the interstate commerce act was adopted, in February, 1887, the act of 1875 was then in force, which enacted that no civil suit should be brought against any person by any original process in any other district than that whereof he is an inhabitant, or in which he may be found at the time of serving process. Under this provision of the act of 1875, this court would have jurisdiction over this case, because the defendant company is engaged in operating lines of railway in the state of Iowa and within the Northern district, subject to the provisions of the statutes of the state of Iowa under which due service on the corporation can be had, and the corporation can be found within the district, within the principle recognized in Re Schollenberger, 96 U. S. 369. This provision of the act of 1875 having been repealed by the amendatory acts of 1887–1888, the query is whether such repeal affects the question of the place of bringing suits based upon the interstate commerce act.

On behalf of plaintiff it is contended that, in the absence of all statutes, the general rule is that if the subject-matter of a controversy is within the jurisdiction of a court, and the defendant comes or is found within the territorial jurisdiction of the court, so that its process may be served upon him, and process in the given case is thus served upon the defendant, jurisdiction is thereby obtained. Granting this to be true, it is, nevertheless, also true that, by legislative enactment, the jurisdiction of both state and federal courts is in many instances limited by provisions requiring specific actions to be brought only in named courts, or within certain counties or districts. A limitation as to the place of bringing suit in the courts of the United States has always existed, being found in the judiciary act of 1789 and in all subsequent acts amendatory thereof. An examination of the act of 1789 shows that section 11 of that act is the one that created and defined the jurisdiction of the circuit courts both as to subject-matter and parties

in civil actions at law or in equity, and in criminal actions, and also as to the place of bringing suit. In other words, the section includes the matter of jurisdiction proper, that is, the question whether, for any reason, the controversy comes within the federal cognizance, and, secondly, in what courts can a defendant be compelled to appear and answer to a matter of federal cognizance? By the act of 1875, the jurisdiction of the circuit courts as to subject-matter and to parties was enlarged to the full constitutional limit, and as to the place of bringing suit the provisions of section 11 of the act of 1789 were not materially changed, except as to cases for the enforcement of liens and coming within the provisions of section 8 of that act. Under both these acts, to wit, of 1789 and 1875, suit in a case of federal cognizance might be brought in any district wherein the defendant might be found at the time of serving process. This continued to be the law until the adoption of the act of 1887, which struck out the words providing for jurisdiction in the district wherein the defendant might be found, and limited the place of bringing civil suits to the district of which the defendant is an inhabitant, except with regard to suits wherein federal jurisdiction exists solely by reason of the diversity of the citizenship of the litigants, in which cases suit may be brought in the district of the residence of either party. It is therefore apparent that, if the provisions of the acts of 1887–1888 in regard to the place of bringing suit are applicable to this case, the defendant cannot be compelled to litigate the claim of alleged overcharges before this court, because the defendant, being a corporation created under the laws of the state of Wisconsin, is not and cannot be an inhabitant of this district. Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935.

Upon behalf of the plaintiff it is urged that the provisions of the acts of 1887–1888 in this regard are not applicable to this case, for the reason that the right of action herein involved arises out of the provisions of the interstate commerce act; that the jurisdiction of the court is dependent upon the latter act, and is not limited by the provisions of the acts of 1887–1888. In support of this view, it is contended that the acts of 1887–1888 are, by the express terms thereof, limited to actions whereof the state courts have concurrent jurisdiction with the federal courts, and that, as this case is one over which the federal jurisdiction is exclusive, it does not in any particular come within the provisions of the acts of 1887–1888. The original interstate commerce act was adopted February 4, 1887, and the act relative to the jurisdiction of the circuit court was approved March 3, 1887. It is well known that both these acts were under consideration, both in committee and before the houses of congress, for a long period, and it can hardly be presumed that it was the intent of congress to alter or amend the interstate commerce act by the judiciary act. Thus, under the provisions of the former act, there is no limit in the matter of amount upon the right of the federal courts to entertain jurisdiction in actions brought to recover damages for violations of the act; and it cannot be the fact that the limitation of $2,000 contained in

the judiciary act was intended to be applied to cases arising under the interstate commerce act, for in that event jurisdiction would not exist in any court in cases wherein the damages did not exceed the sum of $2,000. Upon the question whether actions for damages for violations of section 8 of the interstate commerce act are within federal jurisdiction, it must be held that the provisions of the judiciary acts of 1887–1888 are not applicable thereto. The jurisdiction over the same is a special one, created by the interstate commerce act, and the rights of action thereby created and the jurisdiction thereby conferred exclusively upon the courts of the United States are not affected by the acts of 1887–1888. This was the ruling of the supreme court in the case of U. S. v. Mooney, 116 U. S. 104, 6 Sup. Ct. 304, with regard to the effect of the act of 1875 upon the jurisdiction created by special statutes adopted before the enactment of that act; it being therein held that "the act of 1875, it is clear, was not intended to interfere with the prior statutes conferring jurisdiction upon the circuit or district courts in special cases, and over particular subjects." The construction thus given to the act of 1875 must be equally applicable to the acts of 1887–1888, which are in terms amendments of the act of 1875; and it therefore follows that the exclusive jurisdiction conferred upon the federal courts by section 9 of the interstate commerce act, over causes of action based upon the provisions of section 8 of the act, is not affected by the judiciary acts of 1887–1888. In other words, the jurisdiction of the circuit courts of the United States as to subject-matter and as to parties is not dependent wholly upon the provisions of these acts. It includes the jurisdiction therein provided for, and also the jurisdiction conferred by other acts with regard to special cases and particular subjects. This, however, may be admitted to be true without determining the real question involved in the case now before the court; for, as already pointed out, the question of jurisdiction over the subject-matter of the controversy, or as between the adversary parties, is separate and distinct from the question of the particular court that can rightfully compel the defendant to abide its judgment in the premises. If the interstate commerce act expressly defined the place of bringing suits based upon sections 8 and 9 of that act, I would entertain no doubt that such declaration would control the matter, and that the general provisions of the subsequent acts of 1887 and 1888 would not affect the specific declaration contained in the former act. Section 9 of the interstate commerce act does not define the place of bringing suit in any other way than by providing that such suits must be brought in a federal court of competent jurisdiction. In the act of March 2, 1889, amendatory of the interstate commerce act, which provides for the issuance of writs of mandamus, injunction, and for summary proceedings, to enforce the orders of the commission, the jurisdiction in these matters is declared to be in the circuit court of the district wherein the common carrier has its prinipal office, or in which the violation of the statute took place; but no change is made by the amendatory act in the language used in section 9 of the original act, which au-

thorized the bringing suit in any circuit court of competent jurisdiction. In the absence of any specific definition of the words "of competent jurisdiction" in the interstate commerce act itself, it must be held that it was the intent of congress that the meaning thereof should be derived from the general statute of the United States upon that subject, which at the date of the adoption of the interstate commerce act was the act of 1875. Thus the supreme court, in Re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, in considering the question of the jurisdiction of the circuit courts of the United States over suits for infringement of trademarks, under the provisions of the act of congress of March 3, 1881, held that, as the act itself did not specify in what court of the United States or in what district suits might be brought, the jurisdiction in these respects must be determined by the acts then in force regulating the general jurisdiction. As already stated, when the interstate commerce act was passed, the judiciary act of 1875 was in force; and under its provisions a circuit court within whose district a defendant might be found, when service of process was had upon him, would be competent to take jurisdiction in a case based upon sections 8 and 9 of the interstate commerce act; and this would be true under the provisions of the original judiciary act of 1789, and would be equally true under the general rule of the common law. It thus appears that, at the date of the adoption of the interstate commerce act, this court would have been competent to take jurisdiction of this suit had the right of action then existed; and, if the court is not now competent to entertain the action, it is because the jurisdiction of the court, in this particular, has been taken away by a change in the law.

Upon behalf of the defendant it is claimed that this change in the jurisdiction has been brought about by the adoption of the acts of 1887–1888; whereas on behalf of the plaintiff it is claimed that the acts of 1887–1888 do not affect the case, because the provisions of the first sections of these acts are limited to cases over which concurrent jurisdiction exists between the state and federal courts. In the absence of a controlling decision upon the question, I should greatly incline to the view that the provisions of the judiciary act in force at the time the suit is brought must control in determining the court of the United States which is competent to compel the defendant to submit to its jurisdiction. To my mind there is great force in the argument that the original judiciary act of 1789, and the subsequent acts amendatory thereof, were intended to prescribe the general rule upon the subject of the place of bringing suits cognizable in courts of the United States, and that the general rule therein prescribed should govern all civil cases, at law or in equity, except those touching which a special rule is prescribed by some other act of congress, or which, by reason of the subject-matter, are clearly excepted from the operation of the general rule; and, therefore, that the acts of 1887–1888, being in force when this suit was brought, must be resorted to in determining whether this court is or is not competent to take jurisdiction of this case. The question then arises whether the

supreme court has ruled to the contrary in the cases of U. S. v. Mooney, 116 U. S. 104, 6 Sup. Ct. 304; In re Louisville Underwriters, 134 U. S. 488, 10 Sup. Ct. 587; In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221; and In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273. The decision in U. S. v. Mooney does not deal with the question of the place of bringing suit, but with the question whether the judiciary act of 1875 in any wise affected the jurisdiction with regard to the subject-matter conferred upon the district and circuit courts by special acts, it being held that it did not. In the Case of the Louisville Underwriters, the point decided was that the provisions of the judiciary acts of 1887–1888 do not apply to libels in personam, in admiralty, and that in such cases jurisdiction exists in any district within which the defendant could be served with process. In the opinion, reliance is placed upon the ruling in the earlier case of Atkins v. Disintegrating Co., 18 Wall. 272, in which the question whether the provisions of section 11 of the judiciary act of 1789 are applicable to proceedings in admiralty is discussed at length, and the conclusion was reached that the restrictions found in that section were limited to the jurisdiction created or conferred therein, and did not apply to a jurisdiction—to wit, that in admiralty—not created or conferred by that section. The same principle is recognized and applied in the case of In re Hohorst, wherein two propositions were affirmed: First, that the provisions of the acts of 1887–1888 limiting the place of suit to the district whereof the defendant is an inhabitant were not applicable to cases wherein the defendant was an alien or a foreign corporation; and, second, "that this limitation in the said acts was not applicable to suits arising under the patent laws of the United States, for the reason that the statutes of the United States conferred exclusive jurisdiction in such cases upon the federal courts, and therefore such suits did not come within the meaning of the first section of the acts of 1887–1888, which, in terms, deals only with cases at law or in equity wherein the courts of the United States have concurrent jurisdiction with the courts of the states." In the case In re Keasbey & Mattison Co., based upon an infringement of a trade-mark, it was held that the provisions of section 1 of the acts of 1887–1888 were applicable, because the jurisdiction of the federal courts in such matters is concurrent, and not exclusive. This case was an original proceeding in the supreme court for a writ of mandamus to the judges of the United States circuit court for the Southern district of New York, commanding them to take jurisdiction of the suit for the infringement of a trade-mark, brought against the E. L. Patch Company, a corporation created under the laws of the state of Massachusetts. The supreme court held that, as cases of this character are within the concurrent jurisdiction of the state and federal courts, they are governed, as to the place of bringing suit, by the provisions of the first section of the acts of 1887–1888, and that the ruling in the Hohorst Case was not applicable, because the cases differed in two essential particulars, the second one being that the Hohorst Case "was a suit for infringement of a patent right, exclusive ju-

risdiction of which had been granted to the circuit courts of the United States by section 629, cl. 9, and section 711, cl. 5, of the Revised Statutes, re-enacting earlier acts of congress, and was therefore not affected by general provisions regulating the jurisdiction of the courts of the United States, concurrent with that of the several states." It will be remembered that the Hohorst Case was also an original proceeding before the supreme court for a writ of mandamus to compel the circuit court of the Southern district of New York to take jurisdiction over a suit for an infringement of a patent, against the Hamburg-American Packet Company, a corporation created under the laws of the kingdom of Hanover. The circuit court had refused to take jurisdiction over the case, on the ground that the provision of the acts of 1887–1888 were applicable thereto. The supreme court held this to be error, and that the provisions of the acts of 1887–1888 were not applicable for two essential reasons: First, that a foreign corporation cannot be an inhabitant of any judicial district of the United States, and therefore that clause of these acts could not apply; and, second, because the courts of the United States have exclusive jurisdiction over patent suits. It is clear that the supreme court held that either one of these two grounds was sufficient to except the case from the operation of the acts of 1887–1888; and thus it appears that the supreme court holds that the limitations as to the place of bringing suit, found in section 1 of the acts of 1887–1888, do not apply to cases for the infringement of patents, for the reason that the jurisdiction over such suits is not derived from the provisions of the acts of 1887–1888, but is created by other earlier and special acts, and, as the jurisdiction thus created is exclusive in the federal courts, it is not affected by the provisions of section 1 of the acts of 1887–1888, which deals with cases wherein there is concurrent jurisdiction with the state courts. In the Hohorst Case the supreme court granted the writ of mandamus requiring the circuit court to take jurisdiction of a case wherein the defendant was not a citizen, resident, or inhabitant of the district, upon the ground that, as the suit was for the infringement of a patent, the circuit court would have jurisdiction, provided the defendant was found within the district at the time of the service of process, so that proper service of the writ could be had. It seems therefore impossible to escape the conclusion that the supreme court holds that, where exclusive jurisdiction is created and conferred upon the courts of the United States by special acts passed prior to the enactment of the acts of 1887–1888, the jurisdiction thus conferred is not affected by the provisions of these acts, which are in terms confined to cases wherein the jurisdiction is concurrent with that of the state courts.

In the case at bar the right of action is created by a special act, to wit, the interstate commerce act, passed before the adoption of the judiciary act of 1887. The jurisdiction provided for in section 9 of the act is exclusive in the federal courts, and therefore the jurisdiction created and conferred by sections 8 and 9 of that act with regard to subject-matter and to the place of bringing suit

is not affected by the provisions of the subsequent acts of 1887 and 1888. From this conclusion I can see no escape, if I have correctly interpreted the ruling of the supreme court in the Hohorst Case. That case holds that, as suits for the infringement of patents are exclusively within the jurisdiction of the federal courts, the provisions of section 1 of the acts of 1887–1888 do not affect the same, and that, as these suits could be maintained before the adoption of those acts in any district wherein the defendant could be found and properly served, the same jurisdiction now exists, because section 1 of those acts affects only cases of concurrent federal and state jurisdiction. If it be true that the right to sue for damages for overcharges, made in violation of the provisions of the interstate commerce act, is created by section 8 of that act, and exists wholly independent of the provisions of the judiciary act of 1887–1888; if it be true that the right of action created by section 9 of the interstate commerce act is exclusive in the federal court; if it be true that, if the judiciary acts of 1887–1888 had not been enacted, this court would have jurisdiction over this case under the provisions of the interstate commerce act; and if it be true that the supreme court has declared the law to be that the provisions of section 1 of the judiciary acts of 1887–1888 are confined to cases of concurrent state and federal jurisdiction, and do not affect an existing exclusive jurisdiction in the federal courts, created by other acts touching special subjects,—it must then be that the jurisdiction created and conferred by the interstate commerce act over cases of the character of that now before the court is not affected by the acts of 1887–1888. And as it is clear that, if those acts are not applicable, then this court is competent to take jurisdiction over a defendant found within the district, and properly served within the same, it, of necessity, follows that the jurisdiction of this court over the subject-matter of the controversy and over the defendant corporation is competent and complete, it not being denied that, when service of process was had, the defendant company was found within the district, and was duly served.