[Civ. No. 1051.    First Appellate District.—November 14, 1912.]

## HERMAN OLCOVICH, Appellant, v. GRAND TRUNK RAILWAY COMPANY OF CANADA, Respondent.

ACTION FOR DAMAGES TO GOODS IN TRANSIT AGAINST CARRIER—INTERSTATE COMMERCE ACT—JURISDICTION OF STATE COURTS.—An action for damages to goods in transit based upon section 20 of the Interstate Commerce Act, as amended June 29, 1906, may be brought either in a federal or state court, where the amount involved is sufficient to make their jurisdiction concurrent.    But where the amount involved is less than the jurisdictional sum fixed by the Judiciary Act, for the federal courts, jurisdiction is not confined to the In-

terstate Commerce Commission, but the state courts have jurisdiction of such an action based upon that section.

ID.—EXCLUSIVE JURISDICTION OF FEDERAL COURTS.—The federal courts have exclusive jurisdiction of suits for damages arising under section 8 of the Interstate Commerce Act, including damages for overcharges, or otherwise accruing thereunder, the forum being designed in section 9 of the act, in which such damages may be litigated, as being "any district court or circuit court of the United States of competent jurisdiction." But this exclusive jurisdiction has no application to actions arising under section 20 of that act, as amended.

ID.—SUFFICIENCY OF COMPLAINT IN ACTION FOR DAMAGES—SHIPPING RECEIPTS LIMITING LIABILITY.—The sufficency of the complaint in the action for damages, is not affected by the fact that the shipping receipts made part of the complaint show that the liability of each carrier was to be limited to his own route, since the Interstate Commerce Act upon which the action is founded, declares that "no contract, receipt, rule or regulation shall exempt such carrier . . . from the liability hereby imposed."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Archibald Barnard, for Appellant.

McGowan, Squires & Westlake, for Respondent.

LENNON, P. J.—In this action the plaintiff seeks to recover upon two causes of action, separately stated, the aggregate sum of $1,738.49, as damages for alleged injuries to two distinct lots of merchandise, claimed to have been consigned to plaintiff, and intrusted to defendant for transportation from Berlin, in the state of New Hampshire, to the plaintiff at the city and county of San Francisco.

The defendant is a common carrier, incorporated and existing under the laws of the Dominion of Canada, and is engaged in transporting passengers and freight from state to state in the United States over its own lines of railway, and by connection over the railway lines of other common carriers.

The plaintiff's causes of action, by appropriate allegations, purport to be founded upon an obligation arising by opera-

tion of law out of the provisions of an act of Congress and the amendments thereto known as the Interstate Commerce Act.

The defendant interposed a demurrer to the plaintiff's complaint, which attacked the jurisdiction of the state court to hear and determine the action.    The demurrer, which was based upon several grounds, was sustained without leave to amend being granted.    Accordingly judgment was entered for defendant, from which the plaintiff has appealed.

We are of the opinion that the demurrer was not well taken upon any of the grounds specified, and that the lower court erred in its ruling sustaining the same.

In support of the demurrer the defendant contends that, by the very terms of the act upon which the liability of the defendant is predicated, jurisdiction to entertain the same is expressly and exclusively conferred upon the Interstate Commerce Commission and the federal courts specifically designated in the act.    This contention is founded upon the language of section 9 of the act, which provides that "any person or persons claiming to be damaged by any common carrier subject to the provisions of this act, may either make complaint to the commission, as herein provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district court or circuit court of the United States of competent jurisdiction."    (24 Stats. at Large, 382, [3 Fed. Stats. Ann. 833; U. S. Comp. Stats. 1901, p. 3159].)

The defendant insists that by this section litigants are limited in the selection of a forum for the adjudication of all claims for damages arising out of the Interstate Commerce Act, and the amendments thereto, either to the Interstate Commerce Commission or to the federal courts designated in the act.

This construction of the act has been held to be correct, insofar as it concerns the right to sue for damages for overcharges or for any character of damage accruing out of the violation of the provisions of section 8 of the act, which provides: "That in case any common carrier subject to the provisions of this act shall do, cause to be done or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or

thing by this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act."

The plaintiff's claim for damages in the present case, however, is founded upon the provisions of section 20 of the Interstate Commerce Act, as amended June 29, 1906, by an act of Congress known as the Hepburn Bill, which provides, "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful owner thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company, to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by receipt, judgment or transcript thereof."

It is well settled that the federal courts have exclusive jurisdiction of all suits arising out of a violation of the provisions of section 8 of the Interstate Commerce Act hereinbefore quoted. (*Van Patten* v. *Chicago etc. Ry. Co.,* 74 Fed. 981; *Sheldon* v. *Wabash Ry. Co.,* 105 Fed. 785; *Northern Pac. Ry. Co.* v. *Pacific Coast Lumber Mfgs'. Assoc.,* 165 Fed. 1, [91 C. C. A. 39]; *Union Pac. Ry. Co.* v. *Oregon etc. Lumber Co.,* 165 Fed. 13, [91 C. C. A. 51]; *Texas etc. Railway Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, [9 Ann. Cas. 1075, 51 L. Ed. 553, 27 Sup. Ct. Rep. 350].)

It is equally well settled that a claim for damages caused by injury to goods in transit is not covered and controlled by

the provisions of section 8 of the Interstate Commerce Act, and therefore the provisions of section 9 of the act, which designate the forum in which claims arising out of a violation of the provisions of section 8 may be litigated, have no application to an action for damages founded, as is the present action, upon the provisions of the amendment to section 20 of the act. (*Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 186–208, [31 L. R. A. (N. S.) 7, 55 L. Ed. 167, 31 Sup. Ct. Rep. 164] ; *Galveston etc. Ry. Co.* v. *Wallace,* 223 U. S. 481, [56 L. Ed. 516, 32 Sup. Ct. Rep. 205].)    To hold otherwise would be to deprive the plaintiff of the right to seek redress for the damages here claimed before any tribunal other than the Interstate Commerce Commission.

That this is so is demonstrated by a consideration of other acts of Congress which define generally the jurisdiction of the federal circuit, and district courts.

The act of Congress of March 3, 1875, defining the jurisdiction of the circuit courts of the United States as they formerly existed was amended August 13, 1888, so as to read that "The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, and arising under the constitution and laws of the United States." (18 Stats. at Large, 470; 25 Stats. at Large, 434, [4 Fed. Stats. Ann. 265, U. S. Comp. Stats. 1901, p. 508].)

An examination of the several acts of Congress conferring and defining the jurisdiction of the district courts of the United States shows that such courts did not originally have jurisdiction to hear and determine civil actions involving a claim for damages of the kind now under consideration. (4 Fed. Stats. Ann. 218, [U. S. Comp. Stats. 1901, p 455].) Very recently, however, the circuit courts of the United States were abolished (1 Fed. Stats. Ann. Supp. 1912, p. 249 [U. S. Comp. Stats. Supp. 1911, p. 243]), and thereupon Congress enlarged the jurisdiction of the district courts by conferring upon them the jurisdiction formerly exercised by the circuit courts. By such enlarged jurisdiction the district courts were given cognizance of "all suits of a civil nature, at common law or in equity . . . when the matter in controversy exceeds,

exclusive of interest and costs, the sum or value of three thousand dollars and arises under the constitution or laws of the United States. . . . ''  (1 Fed. Stats. Ann. Supp. 1912, p. 139, [U. S. Comp. Stats. Supp. 1911, p. 135].)

This being so, it would follow—if it were true, as defendant contends, that all causes of action for damage against a common carrier arising out of the Interstate Commerce Act and the amendments thereto fall within and are controlled by the provisions of sections 8 and 9 of the act—that the plaintiff's claim for damages under the provisions of the amendment to section 20 of the act could be litigated only before the Interstate Commerce Commission. That this result was not contemplated by Congress when it enacted the amendment to section 20 of the Interstate Commerce Act, known as the ''Hepburn Act,'' and under which the present action was instituted, is clearly pointed out in the comparatively recent case of *Smeltzer* v. *St. Louis & S. F. R. R. Co.* (C. C.), 168 Fed. 420. In that case the precise point presented here with reference to the jurisdiction of the state courts was raised upon demurrer, and decided to be without merit. The opinion in that case reviews the scope and effect of the several sections of the Interstate Commerce Act and the amendments thereto under discussion here; and the reasoning upon which the court arrived at the conclusion in that case, that the state courts had jurisdiction over actions for damages arising under the Hepburn Act, so clearly and convincingly disposes of the jurisdictional phase of the present case that we feel justified in quoting extensively from the opinion of the learned judge who decided the case referred to. In its pertinent points that opinion is as follows:

''The case is here on removal from the circuit court of Crawford County, Ark. The contention is that under Interstate Commerce Act, Feb. 4, 1887, c. 104, 24 Stats. 379 [3 Fed. Stats. Ann. 833, Comp. Stats. 1901, p. 3154], and amendments thereto (Act June 29, 1906, c. 3591, 34 Stats. 584, [Fed. Stats. Ann. Supp. 1909, p. 255], Comp. Stats. Supp. 1907, p. 892), exclusive jurisdiction is conferred on the district and circuit courts of the United States, or upon the Interstate Commerce Commission, and therefore the state court had no jurisdiction of the case when brought, and this court acquired none by removal.

"In the opinion of the court the contention is without merit. The following cases are cited to support the demurrer: *Haracovic* v. *Standard Oil Co.* (C. C.), 105 Fed. 785; *Kalispell Lumber Co.* v. *Great Northern Ry. Co.* (C. C.), 157 Fed. 845; *Van Patten* v. *Chicago M. & St. P. R. Co.* (C. C.), 74 Fed. 981; *United States* v. *Mooney*, 116 U. S. 104, 29 L. Ed. 550, 6 Sup. Ct. Rep. 304; *United States* v. *Atchison T. & S. F. Ry. Co.* (C. C.), 142 Fed. 187; *Central Stock Yards Co.* v. *Louisville & N. R. Co.* (C. C.), 112 Fed. 823; *Northern Pac. Ry. Co.* v. *Pacific Coast Lumber Mfgs'. Assoc.*, 165 Fed. 1, [91 C. C. A. 39]. I do not think any of these cases in point. They relate to actions brought under sections 8 and 9 of the act of February 4, 1887, known as the 'Interstate Commerce Act.' When that act went into effect no such suit as the one now under consideration was authorized under then existing laws. This suit was brought under section 7 of the act of June 29, 1906, known as the 'Hepburn Act,' 34 Stats. 584, c. 3591. [Fed. Stats. Ann. 1909, p. 255; Comp. Stats. Supp. 1907, p. 892.] That section, it is true, is an amendment of section 20 of the act of February 4, 1887, but the section as it stood in the original act contained no provisions such as that under which this suit is brought. The provision under which this suit is brought . . . relates solely to suits to be brought by shippers over interstate lines for loss or damage to their goods. No provision is made by the section as to what courts the suits shall be brought in, for losses or injuries so sustained. The contention is that the provisions found in sections 8 and 9 of the act of February 4, 1887, and the provision found in the previous part of the section from which the above quotation is taken, applies to this class of actions. I am clearly of opinion that this contention is unsound. . . .

"Sections 8 and 9 of the original Interstate Commerce Act of February 4, 1887, must be considered with reference to the provisions of the act as it stood when enacted, and to the purpose and scope of the act. There was not the remotest reference in that act to the liability of an initial carrier for losses on its connecting lines, nor any provision requiring a railroad engaged in interstate commerce to give a through bill of lading, or withdrawing its power to limit by rule, regulation, or contract its liability to losses occurring on its own lines. Sections 8 and 9 of the act of February 4, 1887, there-

fore, when enacted, could not have had any application to such an action as the one at bar, because no such action then existed. The very language used makes it clear that those sections have no application to such an action as this. . . .

"Manifestly they relate to the right of any one who has been injured to recover such damages as he may have suffered by the failure of the carrier to do what the act required, or for doing the things the act forbids.

"But this suit is not brought because the carrier did something it was forbidden by the act to do, or neglected to do anything that the act commanded. All the cases cited above are of the character indicated, and have no application to a case like the one at bar. This is simply a suit for damages for breach of a contract, either entered into voluntarily without reference to the act, or in pursuance of, or in conformity to it. In either event it does not fall under the sections quoted, and hence is not required to be brought in a district or circuit court of the United States, or before the Interstate Commerce Commission.

"The question then arises, if Congress creates a new cause of action, and, by the act creating it, designates no court in which the suit shall be brought, what courts have jurisdiction? This question was before the supreme court in *Norwich Company* v. *Wright*, 13 Wall. 104, [20 L. Ed. 585]. An examination of the act under which that suit was brought will show that it creates a new cause of action which under the general law belonged to the admiralty jurisdiction. It related wholly to losses and damages sustained on the high seas. That act did not designate any court in which cases created by the act might be tried, but did say, 'the owner or owners of the ship or vessel, or any of them, may take the appropriate proceeding in any court,' for certain purposes provided. The act differs from the one under consideration in that respect only, for the latter makes no reference to courts in which the shipper may institute suits for the relief provided. The supreme court in that case said, on the question of jurisdiction:

" 'The act does not state what court shall be resorted to, nor what proceedings shall be taken; but that the parties or any of them may take "the appropriate proceedings in any court, for the purpose of apportioning the sum for which," etc. Now, no court is better adapted than a court of ad-

miralty to administer precisely such relief. It happens every day that the proceeds of a vessel, or other fund, is brought into that court to be distributed amongst those whom it may concern. Claimants are called in by monition to present and substantiate their respective claims; and the fund is divided and distributed according to the respective liens and rights of all the parties. Congress might have invested the circuit courts of the United States with the jurisdiction of such cases by bill in equity, but it did not. It is also evident that the state courts have not the requisite jurisdiction. Unless, therefore, the district courts themselves can administer the law, we are reduced to the dilemma of inferring that the legislature has passed a law which is incapable of execution. This is never to be done if it can be avoided. We have no doubt that the district courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of the matter; and this court undoubtedly has the power to make all needful rules and regulations for facilitating the course of proceeding.'

"This decision was followed in *Elwell* v. *Geibei and Another* (C. C.), 33 Fed. 71, and was also approved by the supreme court in *Providence & N. Y. Steamship Co.* v. *Manufacturing Co.,* 109 U. S. 578, 27 L. Ed. 1038, [3 Sup. Ct. Rep. 379]. The statute under which those suits were brought ousted the jurisdiction of all courts, state and federal, except the district courts of the United States, because the subject matter was maritime, and the general jurisdiction of the federal courts in all admiralty matters (with certain specified exceptions) is conferred by general statutes of the United States on the United States district courts. . . . These cases, I think, decide the principle involved here.

"We must look, then, to the Judiciary Act to see what courts, under the general law, have jurisdiction in like cases, otherwise we should have the anomaly spoken of in *Norwich Co.* v. *Wright* 'that the legislature has passed a law which is incapable of execution,' which the court in that case said 'is never to be done if it çan be avoided.' By act March 3, 1875, c. 137, 18 Stats. 470, as amended by the act of March 3, 1887, c. 373, 24 Stats. 552, as corrected by act Aug. 13, 1888, c. 866, 25 Stats. 433, [4 Fed. Stats. Ann. 386; Comp. Stats. 1901, p. 508], it is provided:

" 'That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid,' etc.

"By this statute it is plain that the jurisdiction is concurrent in the circuit courts of the United States and the state courts in all common law cases where the amount in dispute, exclusive of interest and costs, exceeds the sum of two thousand dollars, if the suit is between citizens of different states or arises under the constitution and laws of the United States . . . and suits for two thousand dollars, and less must be brought in the state courts, otherwise jurisdiction obtains in no court, state or federal, for that class of cases, and the act of Congress to that extent is unenforceable. Any other conclusion would not only nullify the twentieth section of the Hepburn Act, under consideration, but many other acts of deep concern to the country, among others, act May 30, 1908, c. 225, 35 Stats. 476, [Fed. Stats. Ann. Supp. 1909, p. 588; U. S. Comp. Stats. 1911, p. 1326], 'to promote the safety of employees on railroads,' act April 22, 1908, c. 149, 35 Stats. 65, [Fed. Stats. Ann. Supp. 1909, p. 584; U. S. Comp. Stats. 1911, p. 1322], known as the 'Employers' Liability Act,' act June 29, 1906, c. 3594, 34 Stats. 607, [Fed. Stats. Ann. Supp. 1909, p. 43, Comp. Stats. Supp. 1907, p. 918], known as the 'act to prevent cruelty to animals while in transit,' and others which might be cited."

The case just quoted from was not cited to us by counsel in their briefs or upon the oral argument; and the case of *Galveston etc. Ry. Co.* v. *Wallace,* 223 U. S. 481, [56 L. Ed. 516, 32 Sup. Ct. Rep. 205], was discovered and appended to the briefs by counsel for the plaintiff shortly before the submission of the case here. It must be assumed, therefore, in

fairness to the judge of the lower court, that these two cases were not called to his attention.

In addition to the jurisdictional point just disposed of, the defendant insists that the demurrer was properly sustained upon the ground that neither count of plaintiff's complaint states facts sufficient to constitute a cause of action. In this behalf it is one of defendant's contentions that the complaint should contain an allegation that the damage sued for "occurred on the road of the defendant or on its portion of the through route," because the shipping receipts issued by the defendant are made a part of the complaint, and expressly provide that no carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route.

A complete and conclusive answer to this contention is to be found in the very language of the act itself upon which this action is founded. It declares that "No contract, receipt, rule or regulation shall exempt such common carrier . . . from the liability hereby imposed."

In regard to the several remaining particulars in which the defendant claims that the complaint is deficient in its statement of a cause of action, it will suffice to say that in each instance the specifications of insufficiency relate solely to matters which go only to the uncertainty and ambiguity of the complaint rather than to the sufficiency of the facts stated to constitute a cause of action; and as they were not specified in the demurrer they cannot now be considered.

For the reasons stated the judgment is reversed, with instructions to the lower court to overrule the demurrer and require the defendant to answer.

Hall, J., and Kerrigan, J., concurred.